UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.

JAZMINE CERVANTES,

        Plaintiff,

    v.

WAL-MART STORES, EAST, LP,

       and

WALMART INC.,

        Defendants.

---

## COMPLAINT AND JURY DEMAND

---

Plaintiff Jazmine Cervantes ("Cervantes" or "Plaintiff"), by and through her attorneys, HKM Employment Attorneys, LLP, for her Complaint against Wal-Mart Stores, East, LP and Walmart Inc. (collectively "Walmart" or "Defendants"), and in support thereof states as follows:

### PRELIMINARY STATEMENT

1.    Ms. Cervantes, as a 16-year-old, was sexually harassed while working for Defendants by Assistant Manager Juan Leatualevao (then in his 30s). Mr. Leatualevao's conduct was severe and pervasive, constituting a hostile work environment. On or about January 5, 2020, Mr. Leatualevao assaulted Ms. Cervantes at work when he grabbed her butt. Upon information and belief, a video of the assault exists, of which Defendants are aware.

2.     Shockingly, even before Ms. Cervantes was assaulted while at work for Defendants, Defendants had knowledge that Mr. Leatualevao engaged in sexually inappropriate conduct with numerous other teenage employees of Defendants.  Unfortunately, Defendants failed to take proper steps to investigate and stop further unlawful conduct.

3.     Ultimately, Ms. Cervantes was forced to resign from working for Defendants.  Ms. Cervantes brings this action for damages as a result of Walmart's discrimination against her based upon her sex/gender.  Ms. Cervantes brings claims against Defendants pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII") and the Colorado Anti-Discrimination Act, C.R.S. § 23-34-101, *et seq.* ("CADA"), along with common law tort claims.

## PARTIES

4.     Ms. Cervantes is an individual who is a resident and domiciliary of Colorado.

5.     When Ms. Cervantes began working for Defendants – and the unlawful conduct described herein began – Ms. Cervantes was only 16 years old.

6.     At all times relevant to this Complaint, Ms. Cervantes is and was a member of a protected class of individuals recognized under 42 U.S.C. § 2000e-2(a)(1), which prohibits discrimination based on sex/gender (female).

7.     At all times relevant to this Complaint, Ms. Cervantes was an employee of Defendants under Title VII and CADA.

8.     Ms. Cervantes is an employee as that term is defined at 42 U.S.C. § 2000e(f) and C.R.S. § 24-34-401(2).

9.      Defendants were Ms. Cervantes' employers as that term is defined at 42 U.S.C. § 2000e(b) and C.R.S. § 24-34-401(3).

10.     Wal-Mart Stores, East, LP is a publicly-traded Delaware corporation, authorized to conduct business in Colorado.

11.     Wal-Mart Stores, East is a wholly owned subsidiary of Walmart, Inc.

12.     Collectively, Wal-Mart Stores, East LP and Walmart, Inc. are referred to herein as "Defendants" or "Walmart."

13.     Walmart employs more than 2.2 million associates around the world.

14.     For the fiscal year ended January 31, 2021, Walmart's total revenue was $559 billion.

15.     Defendants are deemed a single employer of Plaintiff by virtue of their centralized control of employment practices, and common ownership or financial control.  Defendants are therefore jointly and severally liable on all claims asserted in this action.

16.     Upon information and belief, both Defendants use the same employee handbook.

17.     Upon information and belief, Defendants use a centralized Human Resources department.

18.     Upon information and belief, both Defendants exercised control over the terms and conditions of Plaintiff's employment.

19.     Defendants both constitute as Plaintiff's employers because their employees acted directly and/or indirectly in the interest of an employer in relation to Plaintiff.

## JURISDICTION AND VENUE

20.     This Court has original jurisdiction over Plaintiff's federal claim pursuant to 28 U.S.C. §§ 1331, 1332, and 1343(a)(3) and (a)(4).  The Court also has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367, as such claims arise out of the same case or controversy as Plaintiff's Title VII claim.

21.     Venue is proper under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to this action occurred in Colorado.

## ADMINISTRATIVE REMEDIES HAVE BEEN EXHAUSTED

22.     Plaintiff incorporates by reference the above paragraphs as though set forth separately herein.

23.     Ms. Cervantes dually filed her Charges of Discrimination, Numbers E2000008841 and 32A-2020-00483 with the U.S. Equal Employment Opportunity Commission ("EEOC") and Colorado Civil Rights Division ("CCRD"), for sex discrimination constituting a hostile work environment on or about May 5, 2020.

24.     Ms. Cervantes was issued a Right to Sue determination regarding Charge Number E2000008841 from the CCRD on December 14, 2020.  Ms. Cervantes was issued a Right to Sue determination regarding Charge Number 32A-2020-00483 from the EEOC on January 28, 2021.

25.     Ms. Cervantes has filed the instant action within ninety (90) days of receipts of the Notices of Right to Sue.

26.     Ms. Cervantes has met all administrative prerequisites prior to filing this action.

27.     Ms. Cervantes filed a Second Charge of Discrimination on or about February 8, 2021, related to retaliatory action that Defendants have taken following her termination.  Ms. Cervantes has not yet received a Right to Sue with respect to the Second Charge of Discrimination.

28.     Upon receiving the Right to Sue for the Second Charge of Discrimination, Ms. Cervantes anticipates filing an Amended Complaint to add the additional acts of retaliation.

## FACTUAL ALLEGATIONS

29.     Plaintiff incorporates by reference the above paragraphs as though set forth separately herein.

30.     Ms. Cervantes began working for Defendants on or about February 16, 2019, as a Cashier at Store #4734 in Arvada, Colorado.

31.     Ms. Cervantes worked for Defendants as a Cashier, and then Sales Associate, from March 2019 to March 2020.

32.     From approximately September 2019 through December 13, 2019, Ms. Cervantes took leave from working for the Defendants due to her high school schedule and volleyball season.

33.     When she started working for Defendants, Ms. Cervantes was 16 years old.

34.     Beginning in or around February 2019, Ms. Cervantes began working with Juan Leatualevao (Assistant Manager).

35.     Upon information and belief, Mr. Leatualevao's birthday is March 23, 1987.  Thus, when Ms. Cervantes began working with Mr. Leatualevao, he was approximately 31 years old.

36.     Because of Mr. Leatualevao's role as Assistant Manager, and Ms. Cervantes' supervisor, Ms. Cervantes frequently had to work in close proximity with Mr. Leatualevao.

37.     Shortly after Ms. Cervantes began working for the Company, Mr. Leatualevao began sexually harassing her.

38.     Mr. Leatualevao frequently made lewd comments to Ms. Cervantes, primarily about her breasts and butt, including but not limited to the following:

    (a)     "Your booty looks nice in those jeans!"

    (b)     "How do you ever run with those big old watermelons?"

    (c)     "Get your cute ass out of here."

    (d)     "You have great breasts."

    (e)     "Don't make me choke you out, and NOT with my hands."

    (f)     "Have you ever let anyone titty fuck you?  I want to titty fuck you."

39.     Mr. Leatualevao frequently made the sexual comments when he was in the back room (i.e. the office area) at the same time as Ms. Cervantes, as he was aware that there were no video cameras monitoring that area.

40.     On one occasion when Ms. Cervantes was in the back room at the same time as Mr. Leatualevao, he picked up her cell phone and began looking through it.

41.     Ms. Cervantes saw this and said: "Hey!  What are you doing?"

42.     Mr. Leatualevao responded: "Looking for the picture that I want!" – indicating he was looking for nude photographs of Ms. Cervantes.

43.     Mr. Leatualevao often aggressively attempted to control Ms. Cervantes in an inappropriate manner.For example, when Ms. Cervantes inevitably had to use the bathroom during a workday, Mr. Leatualevao would interrogate her upon her return, often asking: "Where were you?"

44.     Mr. Leatualevao's inappropriate conduct continued throughout Ms. Cervantes' employment with the Company and became more frequent and aggressive as Ms. Cervantes continued to reject his advances.   Despite Ms. Cervantes showing Mr. Leatualevao that his behavior made her extremely uncomfortable, Mr. Leatualevao was persistent in sexually harassing Ms. Cervantes.

45.     Throughout her employment with Defendants, Ms. Cervantes was forced to listen to sexually-charged and aggressive statements by Mr. Leatualevao on a near-daily basis.

46.     On or about January 5, 2020, Mr. Leatualevao grabbed Ms. Cervantes' butt.

47.     On or about January 7 or 8, 2020, Ms. Cervantes reported the sexual harassment and assault, constituting a hostile work environment, to Defendants.

48.     Ms. Cervantes first reported the sexual harassment and assault to Earnest Twillie (Defendants' Customer Service Manager).

49.     When Ms. Cervantes reported the sexual harassment to Mr. Twillie, he did not appear surprised.  Instead, Mr. Twillie informed Ms. Cervantes that other 16 or 17-year-old female employees had previously reported Mr. Leatualevao's unwanted sexual conduct, and that the reports were ignored by Defendants.

50.     Mr. Twillie instructed Ms. Cervantes to report to Stephanie (last name unknown) in AP/Security to see whether there was a video of Mr. Leatualevao assaulting Ms. Cervantes. Unfortunately, Stephanie was not at work that day.

51.     On or about January 7, 2020, Ms. Cervantes tried to report to the Company, this time to Justine (last name unknown) (Defendants' AP/Security Manager).   Justine told Ms. Cervantes to report to Christina Hess (Defendants' Store Manager).

52.     On or about January 8, 2020, Ms. Cervantes reported the sexual harassment, hostile work environment, and assault to Christina Hess.

53.     Defendants admit that beginning in January 2020, Ms. Cervantes reported to Ms. Hess that Mr. Leatualevao had made lewd comments to her including telling her: "You look cute today" on December 26, 2019, and intentionally touching her butt on January 5, 2020.

54.     During the following weeks, Ms. Cervantes frequently asked Justine for an update on whether there was an investigation into Mr. Leatualevao's conduct.

55.     Justine responded that Ms. Cervantes would have to wait until Ms. Hess was back from vacation, which was anticipated to be in or around late January 2020.

56.     On or about January 7 or 8, 2020, Ms. Cervantes spoke with her then-boyfriend, Alfred Morrison, about what had happened.

57.     Mr. Morrison sent a message to Mr. Leatualevao asking him to leave Ms. Cervantes alone.

58.     The same day, Mr. Leatualevao confronted Ms. Cervantes, stating: "I'm really disappointed in you.  I didn't think you were *that kind of girl*.  I thought you weren't going to tell anyone."

59.     Likewise, Mr. Leatualevao told Ms. Cervantes that he was going to report Mr. Morrison to the police for harassing him.

60.     In January 2020, Defendants informed Ms. Cervantes that they were beginning an investigation.

61.     During the course of Defendants' investigation, Ms. Cervantes' shifts were reduced.

62.     To Ms. Cervantes' knowledge, Mr. Leatualevao's hours and/or shifts were not reduced or impacted during the investigation.

63.     Upon information and belief, on or about January 31, 2020, Mr. Leatualevao was terminated.

64.     On or about February 13, 2020, Ms. Cervantes reported Mr. Leatualevao's conduct to the police department.  [**Exhibit A**, Arvada Police Department, Incident Report].

65.     ***When Ms. Cervantes reported Mr. Leatualevao's conduct to the police, they indicated to Ms. Cervantes that <u>numerous</u> young female employees had reported or were reporting complaints about Mr. Leatualevao***.

66.     Of note, Mr. Leatualevao admitted to the police officers that approximately 15 of Defendants' juvenile female employees were interviewed in Defendants' investigation.  [Exhibit A, pg. 2].

67.     Upon information and belief, Mr. Leatualevao had been moved to different positions working for Defendants ***twice*** prior to Ms. Cervantes' reports due to employee complaints about his conduct.

68.     It was well-known among Defendants' young, female staff that it was critical to avoid being alone with Mr. Leatualevao.

69.     Upon information and belief, numerous management-level employees were aware of Mr. Leatualevao's lewd conduct with Defendants' teenage female employees prior to Ms. Cervantes' reports.

70.     After months of enduring offensive, unwelcome, and pervasive sexual harassment from Mr. Leatualevao – an Assistant Manager for Defendants – and after months of Defendants

knowing about and effectively ignoring the harassment both to Ms. Cervantes and to other teenage employees – Ms. Cervantes had no choice but to resign.

71.    Ms. Cervantes was constructively terminated.

72.    Ms. Cervantes' final date of work for Defendants was on March 5, 2020.

Anticipated Statement of Zaryah Torres

73.    Upon information and belief, Zaryah Torres witnessed the following:

(a)    Ms. Torres began working for Defendants when she was 16 years old.

(b)    Ms. Torres worked for Defendants from July 2019 through August 2019 as a Stocker.

(c)    Throughout Ms. Torres' employment with Defendants, Juan Leatualevao sexually harassed her.

(d)    Mr. Leatualevao frequently made inappropriate comments about Ms. Torres' body.   The following are a few examples of the comments Mr. Leatualevao made about Ms. Torres' body:

i.    You look old for your age.  Your body is more developed than other 16-year-olds that I've met.

ii.    Zaryah, you are so beautiful.

iii.    You look so pretty today, Zaryah.  Oh, look at you!

(e)    On one occasion, in or around July or August 2019, Mr. Leatualevao walked up to Ms. Torres and Angelina (last name unknown, a teenage employee of Defendants) and asked whether either of the girls had boyfriends.  Then, he pulled out his phone and showed the girls pictures of a naked woman,

stating: "Hey, check her out.  This is my side piece."  Ms. Torres and Angelina expressed that they were uncomfortable.  Mr. Leatualevao responded by again thrusting the phone showing naked photographs into their faces and stated: "She's cute, huh?"

(f)     Whenever Ms. Torres was working on a computer at Defendants' location, Mr. Leatualevao would lean over her, extremely and unnecessarily close to her body.

(g)     Throughout Ms. Torres' employment, Mr. Leatualevao frequently brushed his body up against hers.

(h)     Mr. Leatualevao frequently offered Ms. Torres rides home from work.  Ms. Torres refused every time because, on numerous occasions, other teenage coworkers warned her that Mr. Leatualevao is "a creep" and not to accept a ride home from him if it was offered because "he has tried things with other girls" using the same tactic.

(i)     It was well-known among Defendants' young, female staff that it was critical to avoid being alone with Mr. Leatualevao.

(j)     Mr. Leatualevao frequently forced Ms. Torres to stay at work after closing, often until 11:00 pm or midnight.  When Ms. Torres explained to him that she was too young to stay that late, or that she needed to get a ride home from her mom, he tried to pressure her into staying after her shift had ended.

(k)     In or about August 2019, when Ms. Torres finally resigned, she explained to Defendants that she was forced to resign because: "The Manager [Juan Leatualevao] is a creep."

<u>Anticipated Statement of Lacie Monroe</u>

74.     Upon information and belief, Lacie Monroe witnessed the following:

(a)     Ms. Monroe began working for Defendants in or around July 2019, when she was 16 years old.

(b)     Ms. Monroe worked for Walmart from approximately July 2019 to December 2019 as a Stocker.

(c)     Throughout Ms. Monroe's employment with Defendants, Juan Leatualevao (Assistant Manager) sexually harassed and assaulted her.

(d)     Mr. Leatualevao frequently made inappropriate sexual comments to Ms. Monroe, often about her body – the comments occurred, on average, at least once per day before Mr. Leatualevao switched to a different department. The following are a few, but not an inclusive list of examples of Mr. Leatualevao's inappropriate comments:

i.      One day, while Ms. Monroe was taking her vest off after work, Mr. Leatualevao said suggestively: "Take that vest off girl!"   Upon information and belief, Ms. Monroe was 16 years old at the time.

ii.     Mr. Leatualevao told Ms. Monroe: "You have a really good body, and if you worked out more, your butt would look really good."

12

iii.   On numerous occasions, while at work for Defendants, Mr. Leatualevao stated: "I wish you were 18!" By this, Mr. Leatualevao seemed to mean that he wanted to have sex with Ms. Monroe.

iv.   Mr. Leatualevao regularly told Ms. Monroe that he thought her body was "hot."

(e)   On numerous occasions throughout her employment with Defendants, when Ms. Monroe was leaving work for the day, Mr. Leatualevao came up to her, pulled her into a hug, and grabbed her butt. This unwanted touching was witnessed by numerous coworkers, including management-level employees.

(f)   On one occasion, Mr. Leatualevao suggested to Ms. Monroe and Makyla Knoll (another teenage employee of Defendants) that the three of them "should have a threesome."

(g)   When Mr. Leatualevao made sexual and inappropriate statements to Ms. Monroe, he would follow with: "Don't tell anyone." Because of his repeated instruction not to tell anyone, Ms. Monroe was worried that she would get into trouble or be fired if she reported him.

(h)   Mr. Monroe witnessed Mr. Leatualevao tell Jazmine Cervantes: "You are so pretty."

(i)   In or around October or November 2019, Mr. Leatualevao told Ms. Monroe: "I have to be careful because I'm on watch. Someone reported me." By this, Mr. Leatualevao meant that his inappropriate conduct towards

Defendants' young female employees had been reported to Defendants' management, and an investigation into his behavior by Defendants had begun.

<u>Retaliation Addressed in the Second Charge of Discrimination</u>

75.    On or about January 25, 2021, Ms. Cervantes learned that Defendants had implemented a new training that employees were required to attend.

76.    The new training was electronic and included the following slide, which was clearly intended to indicate to Ms. Cervantes' former coworkers that she had reported the supervisor who had sexually harassed and assaulted employees:



77.    Defendants' decision to single Ms. Cervantes out in the training – by using both her name and protected reporting as an example, which was then provided to her former coworkers –

was meant to further publicize her status as a victim and to embarrass and retaliate against her for engaging in protected activity.

78.     Further, Defendants' action, in publicizing this, is contrary to the EEOC's specific advice.  As explained in the EEOC's Enforcement Guidance: Vicarious Liability for Unlawful Harassment by Supervisors, Control No. EEOC-CVG-1999-2: "An employer should make clear to employees that it will protect the confidentiality of harassment allegations to the extent possible . . . [I]nformation about the allegation of harassment should be shared only with those who need to know about it."

### FIRST CLAIM FOR RELIEF
**(Discrimination, Harassment, and Hostile Work Environment Based on Sex/Gender in Violation of Title VII, 42 U.S.C. § 2000e, *et seq.*)**

79.     Plaintiff incorporates by reference the above paragraphs as though set forth separately herein.

80.     Title VII prohibits discrimination based on sex/gender in employment.

81.     Based on the above-described acts, practices, and omissions, Defendants engaged in unlawful discrimination under Title VII based on Ms. Cervantes' sex/gender (female).

82.     Furthermore, Defendants' illegal actions against Plaintiff were of a sexual nature and were aimed at Plaintiff because of her sex, resulting in adverse impacts to the terms and conditions of Plaintiff's employment and further subjecting Plaintiff to harassment and a hostile work environment.

83.     Mr. Leatualevao's conduct was unwelcome, offensive, directed at Plaintiff because of her gender, and was sufficiently severe or pervasive to alter the conditions of Plaintiff's work environment by creating a hostile work environment.

84.     Defendants knew or should have known of Mr. Leatualevao's offending conduct and failed to respond in reasonable manner.

85.     Management-level employees of Defendants knew, or in the exercise of reasonable diligence should have known, of the hostile or offensive work environment, and failed to take prompt and effective remedial action.

86.     Mr. Leatualevao's conduct was sufficiently severe and pervasive that a reasonable person in Plaintiff's position would find Plaintiff's work environment to be hostile or abusive.

87.     At the time the above-described conduct occurred, and as a result of such conduct, Plaintiff believed her work environment to be hostile or abusive.

88.     Defendants knew or should have known of Mr. Leatualevao's conduct and failed to take prompt, remedial action to stop his conduct.

89.     As such, Defendants violated 42 U.S.C. § 2000e-2(a) and discriminated against Plaintiff by not only subjecting her to sufficiently severe or pervasive harassment based on her sex and/or gender so as to alter the conditions and terms of Plaintiff's employment, but also: failed to act and condoned or tolerated such harassment and assault, subjecting Plaintiff to less favorable terms and conditions of employment and forcing Plaintiff's constructive termination.

90.     Defendants subjected Ms. Cervantes to less favorable terms and conditions of her employment based on her sex including, but not limited to, by: subjecting Ms. Cervantes to sufficiently severe or pervasive harassment based on sex so as to alter the terms and conditions of her employment, reducing Ms. Cervantes' hours after she reported harassment, and by constructively terminating Ms. Cervantes.

91.     The reason Defendants submit for changing the terms and conditions of Plaintiff's employment and for forcing Plaintiff's constructive termination are false and pretext for unlawful discrimination.

92.     Defendants acted willfully, wantonly, and/or with malice or with conscious and/or reckless indifference to Ms. Cervantes' equal rights under law, thereby necessitating the imposition of exemplary damages.

93.     As a direct and proximate result of Defendants' above-described discriminatory actions, Plaintiff has suffered loss of income, emotional pain and suffering, embarrassment, and inconvenience and she is entitled to general and special damages, and economic damages including front and back pay. Plaintiff also seeks her attorneys' fees and costs pursuant to 42 U.S.C. § 2000e-5(k).

## SECOND CLAIM FOR RELIEF
### (Retaliation in Violation of Title VII)

94.     Plaintiff incorporates by reference the above paragraphs as though set forth separately herein.

95.     Defendants subjected Ms. Cervantes to less favorable terms, conditions, and privileges of employment, including reducing her hours and/or constructively terminating her employment, because she participated in an investigation of sexual harassment and made multiple complaints to management opposing sexual harassment.

96.     Defendants – by their failure to appropriately respond to and attempt to stop the sexual harassment Plaintiff was subjected to – forced Plaintiff to resign.

97.     Defendants' conduct in subjecting Plaintiff to the above-described materially adverse employment actions is in violation of Title VII and had the effect of depriving Plaintiff of rights and privileges enjoyed by persons who have not engaged in activities protected by Title VII.

98.     Defendants acted willfully, wantonly, and/or with malice or with conscious and/or reckless indifference to Ms. Cervantes' equal rights under law, thereby necessitating the imposition of exemplary damages.

99.     As a direct and proximate result of Defendants' above-described discriminatory actions, Plaintiff has suffered loss of income, emotional pain and suffering, embarrassment, and inconvenience and she is entitled to general and special damages, and economic damages including front and back pay. Plaintiff also seeks her attorneys' fees and costs pursuant to 42 U.S.C. § 2000e-5(k).

**THIRD CLAIM FOR RELIEF**
**(Discrimination and Hostile Work Environment Based on Sex in Violation of the Colorado Anti-Discrimination Act, C.R.S. § 24-34-401 *et seq.* ("CADA"))**

100.    Plaintiff incorporates by reference the above paragraphs as though set forth separately herein.

101.    Under C.R.S. § 24-34-402, it is unlawful for an employer to harass during the course of employment or discriminate against any person because of sex.

102.    Defendants subjected Ms. Cervantes to less favorable terms and conditions of her employment based on her sex including, but not limited to, by: subjecting Ms. Cervantes to sufficiently severe or pervasive harassment based on sex so as to alter the terms and conditions of her employment, reducing Ms. Cervantes' hours after she reported harassment, and by constructively terminating Ms. Cervantes.

103.    Defendants' above-described conduct constituted discrimination based on Plaintiff's sex/gender (female) in violation of CADA.

104.    Defendants acted willfully, wantonly, and/or with malice or with conscious and/or reckless indifference to Ms. Cervantes' equal rights under law, thereby necessitating the imposition of exemplary damages.

105.    As a direct and proximate result of Defendants' above-described discriminatory actions, Plaintiff has suffered loss of income, emotional pain and suffering, embarrassment, and inconvenience and she is entitled to general and special damages, and economic damages including front and back pay. Plaintiff also seeks her attorneys' fees and costs pursuant to 42 U.S.C. § 2000e-5(k).

## FOURTH CLAIM FOR RELIEF
### (Retaliation in Violation of CADA)

106.    Plaintiff incorporates by reference the above paragraphs as though set forth separately herein.

107.    Ms. Cervantes participated in statutorily protected activity by opposing unlawful practices under CADA, including discrimination based on Ms. Cervantes' sex.

108.    As a result of Ms. Cervantes' protected opposition to discrimination and harassment, Defendants retaliated against her by subjecting her to less favorable terms and conditions of employment as described in the Complaint, reducing Ms. Cervantes' hours, and constructively terminating Ms. Cervantes.

109.    Defendants acted willfully, wantonly, and/or with malice or with conscious and/or reckless indifference to Ms. Cervantes' equal rights under law, thereby necessitating the imposition of exemplary damages.

19

110.     As a direct and proximate result of Defendants' above-described discriminatory actions, Plaintiff has suffered loss of income, emotional pain and suffering, embarrassment, and inconvenience and she is entitled to general and special damages, and economic damages including front and back pay. Plaintiff also seeks her attorneys' fees and costs pursuant to 42 U.S.C. § 2000e-5(k).

### FIFTH CLAIM FOR RELIEF
**(Negligent Hiring, Supervision, and/or Retention)**

111.     Plaintiff incorporates by reference the above paragraphs as though set forth separately herein.

112.     Defendants had a duty to vet and supervise Mr. Leatualevao.

113.     Defendants had a duty to use reasonable care when hiring Mr. Leatualevao to ensure that Defendants did not hire an individual who might pose a threat of injury to his fellow employees.

114.     Defendants had a duty to use reasonable care to supervise Mr. Leatualevao.

115.     Defendants were negligent in hiring and/or supervising Mr. Leatualevao.

116.     Defendants' lack of supervision allowed Mr. Leatualevao to use and abuse the power he had over Ms. Cervantes, including by subjecting her to unwelcomed sexual assault, harassment, and negligently and/or intentionally inflicted emotional distress.

117.     Defendants were on notice or reasonably should have been on notice that Mr. Leatualevao's conduct created a risk of harm to its employees, including Ms. Cervantes. Defendants' negligence in addressing Mr. Leatualevao's behavior, and retaining him, condoned his actions and gave him free reign to commit tortious conduct toward Ms. Cervantes.  With proper

supervision and investigation, Defendants would have known they should not have retained Mr. Leatualevao.

118.     As a result of Defendants' negligence in hiring, supervising, and/or retaining Mr. Leatualevao, Ms. Cervantes has been damaged in amounts to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Ms. Cervantes respectfully requests that this Court enter judgment in her favor against Defendants and order the following relief as allowed by law:

A.  Compensatory damages, including but not limited to those for garden variety emotional distress, inconvenience, and mental anguish;

B.  Back pay and benefits;

C.  Front pay and benefits;

D.  Attorneys' fees and costs of this action;

E.  Pre-judgment and post-judgment interest at the highest lawful rate; and

F.  Such further relief as the Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff requests a trial by jury on all issues so triable.

Respectfully submitted this 12th day of March 2021.

HKM EMPLOYMENT ATTORNEYS LLP


By: */s/ Jesse K. Fishman*
    Shelby Woods
    Jesse K. Fishman
    HKM Employment Attorneys LLP
    730 17th Street, Suite 750
    Denver, Colorado 80202
    swoods@hkm.com

jfishman@hkm.com
*Attorneys for Plaintiff Jazmine Cervantes*